THE CHARTER GAS ENGINE COMPANY, Respondent, v. NEWTON J.
KELLAM and ADAM F. SHAFFER, Appellants. ·

*Warranty — when it extends to the safety and ease of operation as well as to the
power of a gas engine — an explosion is evidence of its breach.*

The Patch Manufacturing Company, at the request of a firm for which it was
installing certain machinery, entered into negotiations with the Charter Gas
Engine Company for the purchase of a gasoline engine for use in the firm
business. During the negotiations the engine company sent to the Patch
Company a circular bearing a picture of a gasoline engine and certain words
descriptive of the engine, among which were the following: "Safe," "simple,"
"reliable," "no danger;" and also, "Does not require an experienced man to
set up and start or a licensed engineer to operate." Before the purchase was
consummated the Patch Company turned over to the firm the circulars and cor-.
respondence received from the engine company. The firm thereupon wrote to
the engine company, stating, among other things, that "Gasoline Engines are
entirely unknown to us further than hearing and reading and looking at
catalogue and cuts of same," and also, "If you will give us a guarantee that
your engine will drive 35 actual H. P. and work satisfactory in every respect
as you recommend it to do, we will hereby confirm the order and pay you
according to agreement, as we understand it, $950, 5 per cent. off when
the engine has been tested and fulfills your specifications. As you are
strangers to us, we will ask that the full meaning of a guarantee be
carried out   *   *   *"

In reply to this letter, the engine company wrote the firm, stating, among other
things, "Your understanding of the matter is correct, and we guarantee that
this engine gives 35 actual H. P., each horse power being represented by 33,000
ft. lbs. If you wish us to put this guarantee into a more definite form, we
will gladly do so, and in any shape that you desire.   *   *   *" The engine
was subsequently delivered to the firm, and on the first day on which it was
operated, and just after it had been stopped, it exploded from the base.

*Held,* that the warranty attached to the sale of the gasoline engine was not simply
confined to a warranty of the power of the engine, but was a general warranty
of the engine as recommended both in the letters and in the circulars of the
engine company.

*Semble,* that where a manufacturer of a gasoline engine warrants that it is safe,
reliable, and that it can be run without danger, the explosion of the engine
from an unknown cause constitutes a breach of the warranty.

APPEAL by the defendants, Newton J. Kellam and another, from
a judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of Schenectady on the 16th

day of November, 1901, upon the verdict of a jury rendered by direction of the court after a trial at the Schenectady Trial Term, and also from an order entered in said clerk's office on the 8th day of November, 1901, denying the defendants' motion for a new trial made upon the minutes.

The plaintiff is incorporated under the laws of the State of Illinois and doing business at Stirling in that State engaged in the manufacture of gasoline engines. The defendants are copartners doing business in the city of Schenectady in cutting and dressing stone. The F. R. Patch Manufacturing Company is a corporation of Rutland, Vt., which was furnishing to the defendants certain machinery for use in their business. At the request of the defendants the Patch Manufacturing Company negotiated with the plaintiff for the purchase of a thirty-five-horse power gasoline engine at the price of $950. During the negotiations the plaintiff sent to the Patch Manufacturing Company a circular which had upon it a picture of a gasoline engine and certain words descriptive thereof, among which were the following : " Safe," " simple," " reliable," " no danger." Upon said circular further appeared : " More economical than steam. More reliable than electricity. * * * Does not require an experienced man to set up and start or a licensed engineer to operate. Always ready for use. No attention required after starting. When stopped expense ceases." Before the purchase was completed the Patch Manufacturing Company turned the matter over to the defendants to make the purchase contract. They passed over to the defendants this circular, together with the correspondence which had passed between them and the plaintiff. Upon the 23d day of February, 1900, the defendants wrote to the plaintiff the following letter : " Gentlemen : We are in receipt of a letter from the F. R. Patch Mfg. Co., enclosing yours of the 20th inst. They advise us to order the engine direct from you. Now, this is exactly how the matter stands. We have relied entirely upon Mr. Patch's judgment in regards to power, as we think he had ought to know what is required to run his machines, and as Gasoline Engines are entirely unknown to us, further than hearing and reading and looking at catalogue and cuts of same. After considerable discussion about different makes, Mr. Patch has finally advised us to use your engine, and sent us a copy of his letter to you, 17th inst., in

which he stated that if the engine would do the work required, etc., that we would pay you according to a letter from you of some previous date, which, as we understood, is when it has proved to be what you recommend. * * * If you will give us a guarantee that your engine will drive 35 actual H. P. and work satisfactory in every respect as you recommend it to do, we will hereby confirm the order and pay you according to agreement, as we understand it, $950, 5 per cent off, when the engine has been tested and fulfills your specifications. As you are strangers to us, we will ask that the full meaning of a guarantee be carried out. * * *" In reply to that letter, upon February twenty-sixth, the plaintiff wrote to the defendants a letter, the material parts of which are as follows: "Gentlemen: Yours of the 23rd is received, in envelope postmarked the 24th, 4 P. M., and we have entered your order for our 35 actual H. P. Charter, which we will get up at the earliest possible date. We are exceedingly hard crowded, but will do the best that we can by you and will ship on or before March 15th. Your understanding of the matter is correct, and we guarantee that this engine gives 35 actual H. P., each horse power being represented by 33,000 ft. lbs. If you wish us to put this guarantee into a more definite form, we will gladly do so, and in any shape that you desire. * * *" The engine was thereafter delivered and received about the fourth of April. The machinery, which was to be furnished by the Patch Manufacturing Company, was delayed, and it was not until the ninth of June that it was all in condition so that the engine could be attached thereto and tested. About five o'clock that day, just after the engine was stopped, it exploded from the base. The engineer was injured and a fire was caused which materially damaged the defendant's plant. Notice of the fact of the explosion was immediately telegraphed to the plaintiff. Thereafter, upon the twenty-first day of June, the plaintiff was directed to remove its engine or notified that it would be removed at its expense. The plaintiff demanded pay for the engine, which was refused, and this action was brought to recover the purchase price. The answer, in a general way, denies the allegations of the complaint, and counterclaims for breach of warranty. The case was submitted to the jury, who returned a verdict for the plaintiff, and from the judgment entered upon that verdict, and the order denying a motion for a new trial, this appeal has been taken.

*Alonzo P. Strong* and *W. W. Wemple,* for the appellants.

*E. C. Angle,* for the respondent.

SMITH, J.:

The trial court has apparently held that the only warranty contained in the plaintiff's contract was a warranty that the engine was a thirty-five actual horse power engine; and further held that if the contract be construed to contain a further warranty as to the qualities of the engine there is no proof sufficient to authorize the jury in holding that such further warranty was broken. The contract is contained practically in the letters of February twenty-third and twenty-sixth. Prior to the writing by the defendants of the letter of the twenty-third, the plaintiff's circular was before them, in which it had in substance represented the engine as a safe one, involving no danger, one that " does not require an experienced man to set up and start or a licensed engineer to operate." This letter stated that payment was to be made when the engine " has proved to be what you recommend," and stated that the order conditionally given by the Patch Company would be confirmed if the plaintiff would guarantee that the engine would " drive 35 actual H. P. and work satisfactory in every respect as you recommend it to do." In the letter of the twenty-sixth, this order, as thus conditioned, seems to have been accepted. Otherwise the plaintiff would not have entered it upon its books. The statement in the 2d paragraph of the letter of the specific warranty as to this engine giving thirty-five actual horse power in no way negatives an intention on the part of the plaintiff to give the full warranty which the defendants demanded. The specification of that particular warranty may well have been made to emphasize what was deemed by the parties the most important part of the contract; or it may have been made to describe more specifically that part of the warranty as was done by the clause " each horse power being represented by 33,000 ft. lbs." The statement of an express warranty may at times negative an implied warranty. The statement of a specific warranty will not limit, however, a general warranty demanded unless the intention to so limit be clearly expressed. Here the order conditioned upon a general warranty was in terms accepted. The defendants had represented themselves

as entirely ignorant of gasoline engines and the purchase was pre-
sumptively made upon the representations made by the plaintiff in
its letter and circulars, with the intention of inducing this par-
ticular purchase. It is no hardship on plaintiff to hold that these
representations were made in good faith and were intended to be
included in the warranty. The defendants endeavored to show
that they relied upon these representations. This the court did not
permit. Plaintiff's counsel seeks to justify this ruling upon the
ground that the defendants in their letter stated that they relied
upon the judgment of the Patch Company. But that was simply,
as stated in the letter, as to the amount of power necessary to run
the machinery. We are of opinion, therefore, that the trial court
erred when it held that the warranty was simply confined to a
warranty of power, and was not a general warranty of the engine
as recommended both in the letters and in the circulars of the
plaintiff.

Assuming then that the plaintiffs, by their contract, guaranteed
the engine as represented, we think the court improperly held that
there was no proof for the jury as to the breach of that guaranty
except upon the question of the power developed. That the explo-
sion was not caused by any negligence on the part of the defend-
ants' servants was at least a question for the jury. The engineer
who ran the engine has sworn in detail to the management of the
engine. That management has not been criticised either in the evi-
dence or in the briefs. Nor can the plaintiff well complain that
scientific care had not been given to it after having represented that
the engine did "not require an experienced man to set up and start
or a licensed engineer to operate" it. The claim of the plaintiff
that the explosion may have been caused by dynamite or some other
foreign substance put maliciously under the engine has not the
slightest support in the evidence, and is in fact negatived thereby
as well as by every presumption of law. The defendants' evidence
is to the effect that there was no dynamite or other explosive sub-
stances around the shop which could have been used for that pur-
pose, and there is hardly a suspicion of a motive shown for such an
act. The defendants were held by the trial court with unusual
strictness in their endeavor to prove by witnesses who had at least
some familiarity with the use of gasoline engines that the engine

was improperly constructed. The witness Moore was, we think, qualified to testify as an expert. He swore in substance that the construction of the engine was such as to make it dangerous from the kind of explosion which happened. It is true that this evidence was by the court stricken out. We think the evidence was competent and that the exception to the ruling of the court was well taken. With that testimony in the case, at least, there would have been a question for the jury whether or not the engine was properly constructed. But in this case we can safely go further, and hold that where a manufacturer of an engine warrants that it is safe, reliable, and that it can be run without danger, that warranty is broken by an explosion even from an unknown cause. The ruling of the court below, that as matter of law a warranty that the engine was safe and could be operated without danger had not been broken, was error, for which the judgment must be reversed and a new trial granted.

All concurred.

Judgment and order reversed and new trial granted, with costs to appellants to abide event.